GOTTLIEB LAIER, APPELLANT, V. SOUTH SIDE IRRIGATION COMPANY, APPELLEE.

FILED APRIL 10, 1936. No. 29620.

*O. E. Bozarth* and *C. E. Clark,* for appellant.

*Cook & Cook, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE and CARTER, JJ.

DAY, J.

The plaintiff is the owner of land for which there is an appropriation of water for irrigation dating back to 1895. The present dispute arose over a long-standing argument between the plaintiff, his predecessors in title, and the South Side Irrigation Company over socalled maintenance charges.

The crux of the case is the construction of a right of way contract executed by the company and the plaintiff's predecessor in title in 1914. A brief historical sketch will be helpful to an understanding of the present situation. In January, 1895, some men, one of whom owned the land herein involved, made an appropriation of water for the purpose of irrigation and organized the Orchard & Alfalfa Irrigation Company. The various landowners interested contributed money and labor for the construction of a canal and ditches. Under this set up, water was applied to the land until 1907, when, through disuse and failure to maintain the works, the canal and ditches became filled and in such a condition that they were not usable. In 1913 the South Side Irrigation Company was organized to serve the same general function as the old company. It opened up the canal and ditches and made them serviceable. This new company executed contracts with the appropriators and users of water, recognizing their perpetual right to the use of water for their land and requiring them to pay a maintenance charge for the upkeep of the system. But the then owner of the land involved herein would not enter into such an agreement. However, after some negotiations, a contract was executed providing a right of way in consideration of a perpetual right to the use of the water. The problem of the landowners was to get the water from the river to their land, and the company undertook to solve this problem. The plaintiff contends that this contract means the perpetual water right with free delivery to his land. Around this contract has been waged a protracted argument between the parties. In 1917 there was an appeal before this court in an action brought by the company against the owner of the land to collect the maintenance fee. The own-

er had never exercised his right to the use of water, and the court held that, since he had not promised to pay a maintenance fee to the irrigation company, he was not liable for such a fee on the contract before he commenced using the water. *South Side Irrigation Co. v. Brooks,* 102 Neb. 57, 165 N. W. 467. The plaintiff seeks here to secure the enjoyment of his water right by requiring the company to deliver water on his land without the payment of the annual maintenance charge, and especially the amount of the annual maintenance charge for the past years during which the works have been in operation. An irrigation company is a common carrier of water for those entitled to its use by appropriation, and its rates and charges are subject to regulation and control. *McCook Irrigation & Water Power Co. v. Burtless,* 98 Neb. 141, 152 N. W. 334.

This is a substantial argument against the contention of the plaintiff for a construction of this contract as one to relieve him from payment of maintenance charges. This contract seems plain and unambiguous and incapable of construction. However, contracts between an irrigation company and landowners for the use of appropriated water and for the maintenance of the works are subject to the right of the state to regulate and control the rates. *Marquis v. Polk County Telephone Co.,* 100 Neb. 140, 158 N. W. 927.

The Constitution and laws of the state relating to irrigation and the use of the water of the streams for that purpose form a part of a contract for the use of such water and the maintenance of irrigation works.

In *South Side Irrigation Co. v. Brooks, supra,* it is written: "By statute in this state irrigation companies are made common carriers of water. They are not permitted to make excessive charges or discriminate between users. The defendant, as a user of water, must pay the same fees that others do."

Section 3454, Rev. St. 1913, was repealed in 1919 (Laws 1919, ch. 190), but was substantially the same as section 46-627, Comp. St. 1929, which declared that irrigation works are common carriers, and that they should deliver

all water legally appropriated at a reasonable rate to be fixed by the state railway commission. An operator of an irrigation system must deliver all water legally appropriated to parties entitled to its use at rates fixed by the railway commission.

Such water must be delivered without discrimination between users. The right of way contract in this case recites that the consideration is the granting of a perpetual water right. This term does not include the delivery of water free from the maintenance charge assessed to all other users of water. The district provides for two classes of users, those who were granted perpetual water rights from the system, as the plaintiff, and those who pay what is termed water rent at a higher rate. All others who bought and paid for a perpetual water right at the time of the reconstruction of the works are required to pay the maintenance fee assessed against the plaintiff. To grant him a different rate or delivery of water without payment of a maintenance fee would be discrimination. The contract in question did not deal with the question of maintenance charges. There is no expression relating to it. In *South Side Irrigation Co. v. Brooks, supra,* it was held that the defendant had not agreed to pay a fee, and was not obliged to pay until he commenced to use the water. It is equally true that the company did not agree to furnish water without compensation. The statutes make such a contract impossible. Kinney, Irrigation and Water Rights (2d ed.) p. 2718. The facts are that water has been used upon this land and the maintenance fees paid by tenants of plaintiff. Assuming that the plaintiff was not aware that his tenants paid this rent, nevertheless he was aware that water was being used and knew it was so used when he purchased the land. It would be a gross discrimination to permit the plaintiff to use the water delivered through the canals and ditches of the irrigation company without the payment of charges for maintenance. The trial court rightly held that this suit did not litigate the personal liability of plaintiff for the past maintenance charges. However, it was prop-

erly decreed that plaintiff should be required to pay all maintenance charges upon his land from the date of the decree. Even though an irrigation company may refuse delivery of water for nonpayment of charges past due, it would be inequitable in this suit, where the matter has been in controversy for years, and where there was a good faith argument as to the interpretation, to require payment of all past-due charges, including charges prior to plaintiff's ownership of the land, as a condition precedent to the delivery of water.

The decree of the district court is

AFFIRMED.